UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE WILLIAMSON,
SARAH BARRETT, SHANNON TERRELL,
on behalf of themselves and all others similarly situated,

                              Plaintiffs,

                                                            CLASS ACTION
   -vs-                                                     COMPLAINT

                                                     9:20-cv-537 (MAD/DJS)

ROBERT MACIOL, Oneida County Sheriff;
LISA ZUREK, Chief Deputy Oneida County Jail.

                              Defendants.
_____

## **PRELIMINARY STATEMENT**

1. Women incarcerated in the Oneida County Jail ("the Jail") experience substantially more difficult conditions than do male inmates. The women spend most of their time in windowless cells or in a six-foot wide corridor while their male counterparts enjoy large open spaces with regular access to a recreation room.

2. Women also have inferior access to phones, showers, hot water for cooking, televisions, recreational equipment, reading materials, work programs, and trustee benefits. Defendants argue that the unequal treatment is acceptable because it would cost more to house women in a unit like the men's.

3. In this civil rights lawsuit, plaintiffs Sarah Barrett, Nicole Williamson, and Shannon Terrell contend that Defendants have violated and continue to violate their right to Equal

1

Protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I § 11 of the New York Constitution.

4.      The plaintiffs seek declaratory and injunctive relief ending the unconstitutional policies and practices of Defendants.  Plaintiffs bring this lawsuit on behalf of a putative class consisting of all female inmates who are, or should be, classified as "general custody" and who are now, or will be, incarcerated at the Oneida County Jail.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

6.      This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202.  This Court may also grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, and has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

7.      Venue is proper in the Northern District of New York, pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as all relevant events giving rise to the claims in this action occurred in this district and all defendants reside within the district.

## PARTIES

8.      Sarah Barrett is a forty-five-year-old sentenced inmate at the Jail.  She has been held there since November 27, 2019, and is due to be released on July 26, 2020. During her entire incarceration, Ms. Barrett has been classified as a general custody inmate.

9.      Ms. Barrett has never received a disciplinary write-up at the Jail. She is currently housed in C-Unit with the other general custody women and experiences the gender-based discrimination described below.

10. Nicole Williamson is a thirty-two-year-old woman who has been held at the Oneida County Jail since February 2, 2020. Her sentencing is scheduled for June 1, 2020. She is classified as a general custody inmate.

11. Ms. Williamson has never received a disciplinary write-up at the Jail. She is currently housed in C-Unit with the other general custody women and experiences the gender-based discrimination described below.

12. Shannon Terrell is a forty-five-year-old sentenced inmate who has been held at the Jail since October 8, 2019 and is scheduled for release on June 5, 2020. She is a general custody inmate.

13. Ms. Terrell is currently housed in C-Unit with the other general custody women and experiences the gender-based discrimination described below.

14. Robert Maciol is the Sheriff of Oneida County and head of the Oneida County Sheriff's Office. Sheriff Maciol is an elected official and has final policy making authority for all policies that govern the Corrections and Custody units of the Sheriff's Office. Sheriff Maciol has supervisory authority over all Sheriff's Office staff and is personally involved in authorizing and maintaining the unconstitutional policies and customs challenged by the Plaintiffs. He is sued in his official capacity.

15. Lisa Zurek is the Chief Deputy of the Oneida County Jail. Chief Deputy Zurek is responsible for the management of the Oneida County Jail and is personally involved in authorizing, maintaining, and enforcing the unconstitutional policies and customs challenged by the Plaintiffs. Chief Deputy Zurek is sued in her official capacity.

## FACTS

**General Custody Female Inmates are Similarly Situated to Male General Custody Inmates.**

16.     The Jail is a correctional facility located in Oriskany, New York.  It has the capacity to hold over six hundred inmates.  The current population is approximately 260 inmates, 32 of whom are women.

17.     The Jail holds both men and women who are awaiting trial or transfer to the New York State Department of Custody and Community Supervision, or who are serving a short local sentence.  Men and women are held in the same building but in different sections. All the men and women held at the Jail are in the custody of the Oneida County Sheriff.

18.     Upon admission to the Jail, all inmates go through an admission process including a medical and mental health screening.  Inmates then have a five-day orientation period during which Jail staff set the inmates' classification levels. The classification levels determine where inmates are housed.

19.     There are two classifications at the Jail: "closed custody" and "general custody." The Jail uses a point system to determine which classification an inmate is placed in. Inmates in special housing units such as those in disciplinary segregation or protective custody are automatically classified as "closed custody."

20.     Points for classification purposes are awarded based on the inmate's present charge, criminal history, legal status, incarceration status, and disciplinary record/severity.  The classification officer also takes into account the inmate's mental health or disabilities, suicide attempts, propensity for violence, and vulnerability.

21.     Once the classification officer has made a determination as to a particular inmate, that inmate is informed of score, classification designation, and housing assignment.  Inmates who score between one and ten on the scale are classified as general custody inmates, and inmates who score above ten are classified as closed custody inmates.

22. Closed custody inmates receive only the minimum privileges required by the New York State Minimum Standards. *See* 9 N.Y.C.R.R. §§ 7000 et. seq. According to the Jail policies, general custody inmates receive all the privileges provided by the Jail.

23. The Jail monitors inmates' positive and/or negative behaviors throughout their incarceration on "Inmate Behavioral Log Sheets." An inmate, or the classification officer, can request a change in classification at any time based on the inmate's behavior.

**The Jail Discriminates Against General Custody Women on the Basis of Their Gender.**

*Podular Housing Units*

24. Men classified as general custody are housed in podular housing units ("pods"). Pods have fifty-six individual cells arranged around a central day room. When inmates are outside of their cells, there are no physical barriers between them and the corrections officer assigned to the unit. The Pods were added onto the jail during a renovation and remodel that was completed in 1996. Upon information and belief, there are eight pod style housing units in the Jail.

25. A recreation area attached to the pods has exercise equipment and a basketball hoop. A large window can be opened to let fresh air in. Men can access this area for at least three hours a day but it is usually available whenever they are not mandated to lock-in.

26. Cells on the pods are approximately eight feet wide by ten feet long. There are two windows in the cells. One, on the outside wall, lets in sunlight and allows the inmate to see outside. The other, a small window on the cell door allows corrections officers to see into the cell during their rounds. The cells have a bed, toilet, sink, mirror, desk, and a stool.

27. There are eight showers (one for every seven inmates if the pod is at maximum capacity) and seven telephones (one for every eight inmates if the pod is at maximum capacity) on each

pod. The showers and phones are in separate areas so inmates can use the phone while others are showering.

28. The pods each have a small library with games, books, cards, and magazines for the inmates' use. Another small room on each pod allows privacy during inmates' video calls with their families and loved ones.

29. There are two cable televisions on each pod. The pods also have a hot water dispenser so inmates can have hot water for cooking and a microwave.

30. The pods have air conditioning.

31. The Jail's stated goal in housing inmates in this environment is to give them more independence, reduce inmate misbehavior and decrease tensions with staff.[1] An inmate who misbehaves is removed to a more restrictive environment such as the linear housing units in which all women in Defendants' custody are housed.

32. The common area of one of the Jail's pod housing units is pictured below:



***Linear Housing Units used by the General Custody Women***

---

[1] Sheriff Robert Maciol, *Oneida County Sheriff's Office 2019 Annual Report,* available at: hattp://ocsheriff.discoveregov.com/sites/default/files/OCSO%20annual%202019.pdf (last accessed May 11, 2017.)

33.     Women classified as general custody are housed in linear housing units. Otherwise, these units are predominantly used for men with histories of behavioral issues and/or disciplinary problems. They are also used for people with mental health or medical issues that necessitate separation from other inmates.

34.     The Jail describes the linear units as "starkly different" from the pods.[2] The linear units have less physical space, and inmates' movements are severely restricted. The Jail describes linear units as "the ideal option for housing inmates with special needs."

35.     The linear units are over fifty-five years old and have remained relatively unchanged since they were first built in 1965.

36.     Women at the Jail were previously held in "Pod Four." On the pod the women had access to the same benefits general custody men currently have.

37.     On the pod the "general custody" women were housed with the "closed custody" women. Despite their differing classifications, there was very little conflict between the women.

38.     On January 22, 2020, corrections officers moved the female inmates from the pod into the "Henry" Unit. The Henry Unit is a linear housing unit with two separate but identical sides each containing twenty small open-bar cells. It was formerly used as the men's Disciplinary Segregation Unit or "the Box." The officers gave the women no explanation for the move. Closed custody women were housed in "Henry Left" and general custody women were housed in "Henry Right". The women housed on the separate sides of the unit cannot see, hear, or interact with one another.

39.     The transferred inmates found the Henry Unit covered in dirt and human excrement with used toiler paper on the floors, walls, and ceiling. Urine and feces was smeared in cells and on walls.

---

[2] *Supra fn. 1*

40. Twelve female inmates were given only two gloves and two bottles of disinfectant to clean the unit. The block was so disgusting some of the women became sick during the cleaning.

41. For several weeks the general custody women housed on Henry Right had no access to tablets, hot water, television or books.

42. On April 1, 2020, all the women were moved to another linear housing unit, "Charlie Unit" ("C-Unit").

43. The C-Unit is a smaller version of the Henry Unit. It contains two separate but identical sides of sixteen cells situated in a straight line. One side holds the women classified as general custody and the other houses the women classified as closed custody. The general custody women and closed custody women cannot see, hear or interact with one another.

44. Each side of the C-Unit has a six-foot wide catwalk outside the cells. The catwalk has four small picnic style tables on it. It is the only common area for the women to congregate. Because the four windows on each side of the unit are frosted, it is impossible to see outside. There is no air conditioning on the unit.

45. The cells on C-unit are smaller than the ones on the pods. They are approximately five feet wide by seven feet long. There is much less privacy in cells in linear units because they have open bars on the outside instead of doors. The cells contain only a bed, toilet, and a sink. There are no windows in the cells.

46.     Pictured below is a linear cell from the Henry Unit, which is identical to the C-Unit cells,



47.     There is one shower and one phone on the general custody side of the unit.  In theory, this would mean one shower for about every sixteen women and one phone for the all the sixteen women housed on the general custody side.  However practical access is even more restricted. The showers and phone are in the same area, and only one woman is allowed into the phone/shower area at a time.  Thus, there will be times when no one can use the phone as well as times when no one can take a shower, and no more than one woman at a time can take a shower.

48.     There is no microwave on the general custody side of the unit.  The women also do not have regular access to hot water or clean cold water.  Room temperature water is delivered to them two or three times a day.

49.     Women have access to a television every other day, but they can only watch DVDs. They watch the same DVD movies repeatedly. Because they cannot watch the news and do not get newspapers, they must rely on their phone conversations with friends and family for news of the outside world including news, highly relevant in the current environment, of the Covid-19 pandemic.  Unlike the pods housing male inmates, C-unit has no library with books, and magazines Women are allowed only two books a week from the library.

50. The general custody women have only one hour of recreation time a day. Their recreation yard is a small fenced-in basketball court with a covering over it. There is a basketball hoop on the yard, but the balls are hardly ever inflated enough to play. There is no exercise equipment.

51. When the closed custody side of C-Unit is at maximum capacity the Jail moves women to the general custody side of the unit.

52. One of the Jail's linear housing units is pictured below:



*Women are Not Given Equal Access to Programming and Benefits*

53. Inmates who exhibit good behavior at the Jail can obtain "trustee" status. This allows the inmates to receive extra benefits in exchange for cleaning and helping out around their housing unit. Male trustees receive one free hour of video calls a week and extra commissary items. Women trustees receive neither. For example, Plaintiff Barrett quit her position as a trustee

because the Jail continuously refused to give her the one-hour of free video calls she was entitled to.

54. The Jail offers work programs including laundry, food service, car wash, general library, print shop, grounds maintenance, building maintenance and janitorial. Women are only allowed to be on the laundry crew.

55. Inmates at the jail also have tablets available to make video-calls to their families. Men's units have twelve tablets (one for approximately every five inmates). The general custody women have only two (one for every eight inmates).

***Defendants' Discrimination against Women Does Not Serve an Important Governmental Objective and The Discriminatory Means Employed by Defendants are not Substantially Related to the Achievement of Those Objectives***

56. Defendants cite the smaller female inmate population and the cost of operating a pod for them as justification for subjecting them to more onerous conditions and depriving them of programs and benefits. Specifically, Defendant Maciol references the cost of heating, electricity and staffing the pod with corrections officers.

57. The disparate treatment between general custody men and women at the Jail is not substantially related to any actual and important government objective.

58. Plaintiffs Barrett, Williamson, and Terrell filed several grievances to address the discrimination faced by women at the Jail, but the Jail has continuously refused to respond. The corrections officers tell the general custody women if they want to be treated better they should have never came to jail.

59. When confronted with the women's complaints about unequal treatment, Defendant Maciol responded that the move of women to the more restrictive linear housing units is permanent unless there is a significant change in the population.

**CLASS ALLEGATIONS**

60.     All plaintiffs bring the First and Second Cause of action pursuant to Rule 23(a) and b(2) of the Federal Rules of Civil Procedure, seeking declaratory and injunctive relief on behalf of a class of "all female inmates who are, or should be, classified as "general custody" and who are now, or will be, incarcerated at the Oneida County Jail." All class members face discrimination on the basis of their gender as a direct result of Defendants' policies.

61.     All four requirements of 23(a) are satisfied:

   a.     *Numerosity*: Joinder of all class members is impracticable because of the size of the class and the characteristics of the class members. Every woman who is, or will be, incarcerated at the Oneida County is subjected to or at risk of being subjected to their discriminatory policies and practices. In April 2020 there were thirty-two women held at the Oneida County Jail. Every month, additional class members cycle in and out of the Jail.  In 2019 over seven hundred women were admitted into the Jail. Many of these women are unable to file lawsuits to address this discrimination on their own because of their lack of financial resources, and length of time they will be incarcerated.

   b.     *Commonality:* There are questions of law and fact common to all of the members of the class, including but not limited to:

- Whether the Defendants violate the Fourteenth Amendment Equal Protection rights of the putative class by housing them in the old linear style housing unit instead of the pods;

- Whether Defendants violate the Fourteenth Amendment Equal Protection rights of the putative class by denying them the privileges, services, and programs provided to male inmates at the jail;

- Whether the Defendants have a genuine and exceedingly persuasive justification for their failure to treat putative class members and similarly situated men equally;

- Whether the Defendants denial of pod style housing and its concomitant benefits, services and programs to the putative class is substantially related to the achievement of important government interests; and

- Whether the Defendants violate the rights of the putative class under the Article I § 11 of the New York Constitution.

c.   *Typicality:* The claims of the named Plaintiffs are typical of those of the class. Each named Plaintiff has been subjected to the challenged policies and practices.

d.   *Adequacy of Representation:* The named Plaintiffs, their representatives, and class counsel will fairly and adequately represent the interests of the class. The named Plaintiffs and their representatives have no interests in this matter that are antagonistic to other class members. Class counsel has many years of experience in civil rights and class action litigation.

62.   Class-wide declaratory and injunctive relief are appropriate under rule 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the class as a whole.

## CLAIMS FOR RELIEF

### First Cause of Action

63.   The Defendants' actions or inactions have violated and continue to violate the named Plaintiffs' and putative class members' right to Equal Protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

### Second Cause of Action

64.     The Defendants' actions or inactions have violated and continue to violate the named Plaintiffs' and putative class members' rights under Article I § 11 of the New York State Constitution

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court to:

(1)     Declare Defendants' acts and omissions violate the named Plaintiffs' and putative class members right to Equal Protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I § 11 of the New York State Constitution;

(2)     Enter all necessary injunctive relief including but not limited to prohibiting Defendants from denying Plaintiffs and the putative class access to equal housing benefits and programs afforded to male inmates;

(3)     Award Plaintiff's costs, including reasonable attorneys' fees under 42 U.S.C. § 1988; and other relevant provisions of law; and

(4)     Grant any other and further relief, as the Court may deem necessary and proper.

Date: 5/12/2020                                                         Respectfully submitted,

/s/Joshua Cotter
**LEGAL SERVICES OF**
**CENTRAL NEW YORK, INC.**
**Joshua Cotter (518217)**
**Sara Adams***
**Samuel C. Young (508916)**
**Attorneys for the Plaintiff**
**221 South Warren Street, 3rd Fl.**

**Syracuse, New York 13202**
**(315)-703-6500**

**Maurie Heins (101952)**
**Attorney Emeritus Program**
**221 S. Warren St., 3rd Fl.**
**Syracuse, New York 13202**
**315-703-6500**

*Application for admission pending